**ATTACHMENT A**

Defendant Longview School District operated official social media accounts, including Facebook and X (formerly Twitter), to disseminate District communications and engage the public.
District personnel acting within the scope of their employment administered these accounts and exercised authority to enable or disable public comment functionality.
The disabling and restriction of comment functionality described below were undertaken by District officials pursuant to their official duties and constituted actions under color of state law.

ATTACHMENT B`

## FACTUAL ALLEGATIONS

### A. The District's Interactive Comment Forum

9. The District operates official social media accounts, including a Facebook page and an X (formerly Twitter) account, to communicate with the public about school governance, operations, and public funding.
10. On its official Facebook page, the District enabled the interactive comment function on its posts and permitted members of the public to publish comments visible to others.
11. The District historically allowed public engagement in comment threads on matters including school governance, safety, events, funding, and community initiatives.
12. By enabling and administering the interactive comment feature for public participation, the District opened an interactive space for private speech on District-related matters.
13. The District retained technical control over whether comment functionality was enabled and exercised that control by enabling or disabling participation.
14. At all relevant times, the District did not publish written, objective, viewpoint-neutral standards governing when comment functionality would be disabled or restricted.

---

### B. Levy Posts and Plaintiff's Participation (January 21–22, 2026)

15. In January 2026, the District published multiple posts advocating passage of a school funding levy.
16. Plaintiff posted civil, fact-based comments on levy-related posts addressing District spending and governance priorities.
17. Plaintiff's comments addressed matters of public concern.
18. On January 21, 2026, Plaintiff commented on a levy-related Facebook post dated January 19, 2026.
19. Within hours of Plaintiff's participation, comment functionality on that specific post was disabled.
20. At that time, other levy-related posts on which Plaintiff had not commented remained open and accepting public comment.
21. No other levy-related posts were disabled during that same time window.
22. Later on January 21, 2026, Plaintiff commented on additional levy-related posts.
23. Following Plaintiff's participation on those specific posts, comment functionality on those posts was disabled.
24. At the time those posts were disabled, other levy-related posts remained open.
25. The restrictions were applied sequentially and in close temporal proximity to Plaintiff's participation rather than uniformly across all levy-related posts.
26. On January 22, 2026, Plaintiff was again able to comment on a levy-related post before comment functionality on that post was subsequently disabled.

---

### C. Absence of Neutral Moderation Criteria

27. At the time comment functionality was disabled on January 21, 2026, the affected posts contained approximately nine or fewer comments.
28. The comments were civil and contained no profanity or threats.
29. Defendants did not identify any written moderation rule that Plaintiff had violated.
30. The District maintained discretionary moderation practices without published, objective standards.

---

### D. Comparator Posts Remained Open

31. During the same period in which levy-related posts were restricted, non-levy posts remained open for public comment.
32. For example, posts dated December 12, 2025 concerning school safety and teamwork continued to allow public comments while levy-related posts were restricted.
33. The District did not impose uniform comment restrictions across its Facebook page.

---

### E. February 10, 2026 Toggle

34. On February 10, 2026, the day of the levy vote, the District enabled comment functionality on its Facebook page.
35. A member of the public posted a single neutral comment stating, “Thanks for the reminder.”
36. Within approximately twenty minutes, the District again disabled public commenting.
37. The restriction occurred despite the absence of incivility or high comment volume.
38. The District retains authority to enable and disable comment functionality at its discretion.

---

### F. Municipal Responsibility

39. The District’s official social media accounts were administered by District personnel acting within the scope of their duties.
40. The decisions to disable comment functionality were made and implemented pursuant to the District’s practices for managing its social media accounts.
41. The District’s discretionary moderation practices, and failure to adopt objective and viewpoint-neutral standards, were a moving force behind the restriction of Plaintiff’s speech.

---

**G. Ongoing Risk**

42. The District continues to operate official social media accounts and retains authority to restrict comment functionality.
43. Plaintiff intends to continue participating in public discussion concerning school governance and funding.
44. The District has not adopted objective moderation standards or disavowed the challenged practices.
45. Plaintiff faces a real and immediate risk that comment functionality will again be restricted in response to protected speech.