# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

**Sean Turpin,**
Plaintiff,

v.

**Longview School District No. 122;**
**Rosie Carter, in her individual capacity;**
**Karen Cloninger, in her individual capacity;**
**Rick Parrish, in his individual capacity;**
Defendants.

Case No. 3:26-cv-05126-DGE

FIRST AMENDED COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983
JURY TRIAL DEMANDED

## I. INTRODUCTION

1. This action seeks declaratory, injunctive, and damages relief under 42 U.S.C. § 1983 for violation of Plaintiff's rights under the First Amendment.
2. Plaintiff challenges Defendants' hiding of Plaintiff's comments and disabling of the interactive comment functionality on levy-related posts published through the District's official Facebook page after Plaintiff engaged in protected political speech opposing a school funding levy and criticizing District governance, spending priorities, and performance.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.
4. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to this action occurred in Cowlitz County, Washington.

# III. PARTIES

IV. Plaintiff Sean Turpin is domiciled in the State of Tennessee. At all times relevant to the allegations in this Complaint, Plaintiff resided in Longview, Washington. Plaintiff currently divides his time between Tennessee and Washington while completing his relocation to Tennessee. Plaintiff owns real property in Longview, Washington, continues to pay property taxes supporting Defendant Longview School District No. 122, has children and grandchildren who reside in the region, and intends to continue participating in matters concerning the District, including discussion on its official social media platforms.

V. Defendant Longview School District No. 122 ("District") is a municipal corporation organized under Washington law and is subject to suit under 42 U.S.C. § 1983.

VI. Defendant Rosie Carter was, at all relevant times, employed by Longview School District No. 122 and served as the primary manager of the District's social media pages, including its Facebook page. According to the District's verified interrogatory responses, Rosie Carter had full ability to log in to, access, and utilize the District's Facebook page; posted the subject Facebook post; and disabled or hid comments on that post while acting within the course and scope of her employment and under color of state law.

VII. Defendant Karen Cloninger was, at all relevant times, Superintendent of Longview School District No. 122. According to the District's verified interrogatory responses, Karen Cloninger participated in decisions concerning the disabling, restriction, hiding, filtering, or moderation of comments on the District's Facebook page. After Rosie Carter reported that comments had become unrelated to the original Facebook post and disruptive, Karen Cloninger directed that comments remain disabled while acting within the course and scope of her employment and under color of state law.

VIII. Defendant Rick Parrish was, at all relevant times, Executive Director of Communications & Operations for Longview School District No. 122 and possessed administrator-level access to the District's Facebook page and authority to moderate content. According to the District's verified interrogatory responses, Parrish discussed the hiding of Plaintiff's comments with Rosie Carter and was one of the individuals responsible for creating, implementing, interpreting, or enforcing the District's asserted practice of disabling or hiding comments it deemed unrelated to the subject post or disruptive. On January 21, 2026, Parrish personally communicated with Plaintiff regarding the challenged moderation, stated that he had determined what had occurred, acknowledged that the comments characterized as uncivil were not necessarily Plaintiff's comments, attributed the disabling of commenting to the District's asserted "civility policy," and informed Plaintiff that commenting had been disabled and would remain so. Documents subsequently produced by the District further establish that Parrish participated in discussions concerning the District's Facebook moderation and directed District employees that public commenting would be disabled on all Facebook posts going forward and that existing Facebook content and comments were not to be altered without his approval. Parrish acted within the course and scope of his employment and under color of state law.

# IV. FACTUAL ALLEGATIONS

## A. The District's Interactive Comment Forum

10. The District operates official social media accounts, including a Facebook page and an X (formerly Twitter) account, to communicate with the public about school governance, operations, and public funding.
11. The District intentionally used the Facebook page to communicate with the public on school governance and funding matters.
12. The page was held out to the public as an official communication channel of the District rather than a personal page of any individual employee or official.
13. On its official Facebook page, the District enabled the interactive comment function on its posts and permitted members of the public to publish comments visible to others.
14. The District enabled comments as part of that public engagement.
15. The District historically allowed public engagement in comment threads on matters including school governance, safety, events, funding, and community initiatives.
16. Members of the public, including Plaintiff and other community members, used the District's Facebook comment threads to discuss District policies, funding requests, school governance, and matters affecting taxpayers, students, and families. The District permitted users to publish comments visible to others and permitted users to respond to one another within the same discussion threads.
17. The District used its official Facebook page as a public-facing communication tool concerning District affairs and invited public attention to District programs, operations, and funding matters, including levy-related advocacy. By enabling comments on those official posts, the District intentionally opened the interactive portions of those posts for discussion by members of the public concerning District-related matters.
18. The District permitted back-and-forth discussion among multiple users.
19. The District retained technical control over whether comment functionality was enabled and exercised that control by enabling or disabling participation.
20. Even when Defendants disabled public commenting on particular posts or across the page, the District's official Facebook page and the posts themselves remained publicly viewable.
21. On information and belief, reactions and share features remained available even when public commenting was disabled, such that Defendants restricted one channel of public participation while continuing to use the page as a public-facing communication platform.
22. The District retained authority to moderate but did not publish objective, viewpoint-neutral rules.
23. At all relevant times, the District did not publish written, objective, viewpoint-neutral standards governing when comment functionality would be disabled or restricted.
24. The District also produced no responsive written policies, procedures, guidelines, training materials, directives, memoranda, presentations, manuals, or other documents governing administration of District social media accounts or moderation of public comments on District social media platforms in effect during January 2026.

## B. Levy Posts and Plaintiff's Participation (January 21–22, 2026)

25. In January 2026, the District published multiple Facebook posts advocating passage of a school funding levy.
26. The District invited and permitted members of the public to participate through Facebook's interactive comment feature.
27. Plaintiff posted civil comments expressing opposition to the proposed levy and discussing District spending, governance, and publicly available information concerning District performance.
28. Plaintiff's comments opposed passage of the levy and urged taxpayers to vote against it based on Plaintiff's views concerning the District's stewardship of public funds, student outcomes, and Board priorities.
29. Plaintiff's comments remained focused on the proposed levy because they addressed whether taxpayers should approve additional funding in light of the District's spending priorities, governance, financial management, student performance, and other publicly discussed District matters.
30. Plaintiff's comments relied upon publicly available information, including information previously published by the District and publicly available data, in discussing the proposed levy and matters directly bearing on whether the levy should be approved.
31. Plaintiff's comments addressed matters of public concern and constituted protected political speech under the First Amendment.

## C. January 21 Moderation Decisions

32. On January 21, 2026, Plaintiff commented on the District's January 19, 2026 levy-related Facebook post.
33. Shortly thereafter, comment functionality on that post was disabled.
34. According to the District's verified interrogatory responses, Rosie Carter was the primary manager of the District's Facebook page, posted the subject Facebook post, and was the individual who disabled commenting and Plaintiff's comments on the subject post.
35. The District further stated that, after Rosie Carter informed Superintendent Karen Cloninger that comments had become unrelated to the original Facebook post and disruptive, Karen Cloninger directed that comments remain disabled. The District further stated in verified interrogatory responses that, following that exchange, comments on all posts were disabled going forward. Documents produced in discovery further establish that Rick Parrish subsequently directed District communications staff that public commenting would be disabled on all Facebook posts going forward and that existing Facebook content and comments were not to be altered without his approval.
36. At the time the District asserted that comments had become unrelated or disruptive, Plaintiff's comments continued to address the proposed levy, District spending, financial stewardship, and other issues Plaintiff believed were relevant to whether taxpayers should approve the levy.
37. The District's produced screenshots depict Plaintiff's comments as hidden while other participants continued to exchange comments within the same discussion threads.

## D. Sequential Restrictions

38. Later that same day, Plaintiff commented on additional levy-related Facebook posts.
39. Plaintiff's comments were civil and contained no profanity or threats.
40. Following Plaintiff's participation on those posts, comment functionality was likewise disabled.
41. The District admitted in response to requests for admission that comments were disabled on one or more District Facebook posts at a time temporally following Plaintiff commenting.
42. The restrictions occurred sequentially and in close temporal proximity to Plaintiff's participation rather than through a uniform page-wide policy.
43. During this period, other participants also continued commenting within the levy discussion.

---

## E. Hidden Comments

44. Discovery further revealed that comments on multiple levy-related posts had been hidden by the District.
45. Rosie Carter informed Superintendent Karen Cloninger that there were several additional levy-related posts on which Plaintiff had commented and that some of those comments had been hidden.
46. Rosie Carter further advised Superintendent Cloninger that additional screenshots of those posts were available.
47. The District's produced screenshots depict Plaintiff's comments as 'Hidden by This Page' while other participants continued to exchange comments within the same discussion threads, supporting an inference that Defendants selectively applied moderation tools against Plaintiff's speech.
48. On information and belief, Defendants did not apply the same moderation measures to speakers expressing views favorable to the levy or otherwise aligned with the District's position, and instead selectively applied those measures against Plaintiff after he expressed opposition to the levy and criticism of District governance, spending, and performance.

## F. February 10, 2026 Toggle

49. On February 10, 2026, the day of the levy vote, the District enabled comment functionality on its Facebook page.
50. A member of the public posted a single neutral comment stating, "Thanks for the reminder."
51. Within approximately twenty minutes, the District again disabled public commenting.
52. The restriction occurred despite the absence of incivility or high comment volume.
53. The District retains authority to enable and disable comment functionality at its discretion.

54. The District's ability to toggle public commenting on and off confirms its continuing control over whether members of the public may participate in the interactive portions of its official Facebook posts.
55. Even when commenting was disabled, the District's official Facebook page and posts remained publicly viewable, and on information and belief other engagement features remained enabled.

---

## G. Municipal Responsibility

56. The District's official social media accounts were administered by District employees acting within the course and scope of their employment and under color of state law. According to the District's verified discovery responses and documents produced in discovery, Rosie Carter was the primary manager of the District's Facebook page, had full ability to log in to, access, and utilize the page, posted the subject Facebook post, and disabled or hid comments on that post. According to the District's verified discovery responses, Karen Cloninger participated in decisions concerning the disabling, restriction, hiding, filtering, or moderation of comments on the District's Facebook page and directed that comments remain disabled after being informed of the comment activity on the levy-related post.
57. The District's verified discovery responses further identify Rick Parrish as possessing administrator-level access to the District's Facebook page and as one of the individuals responsible for creating, implementing, interpreting, or enforcing the District's asserted practice governing the disabling or hiding of comments.
58. The District further stated in verified discovery responses that it had a standard practice and procedure of disabling or hiding comments when they became unrelated to the subject post or disruptive in nature. That asserted standard practice was unwritten, discretionary, and not governed by published objective, viewpoint-neutral criteria.
59. The challenged moderation decisions were carried out through the District's official Facebook page by District employees exercising authority delegated to them by the District to administer and moderate that page.
60. At all relevant times, the District had not adopted or published written, objective, viewpoint-neutral standards governing when comments would be hidden or when comment functionality would be disabled. The District also produced no responsive written policies, procedures, guidelines, training materials, directives, memoranda, presentations, manuals, or other documents governing administration of District social media accounts or moderation of public comments on District social media platforms in effect during January 2026.
61. The District's discretionary moderation practices, the authority delegated to District employees to implement those practices, the participation and direction of senior District officials—including Superintendent Karen Cloninger and Executive Director of Communications & Operations Rick Parrish—in the challenged actions and practices, and the absence of written objective standards or training were each a moving force behind the restriction of Plaintiff's protected speech.

62. The challenged moderation actions were taken pursuant to the District's policy, custom, or practice, including authority delegated to District officials responsible for administering the District's official Facebook page, and were participated in, directed, or approved by senior District officials with decision-making authority concerning that page.

### H. Ongoing Risk

63. Plaintiff regularly monitors the District's official Facebook page and other official social media accounts for posts concerning levies, taxation, school governance, spending, student performance, and related matters.
64. Plaintiff expects Defendants to continue using the District's official social media accounts to communicate with the public about District affairs.
65. Plaintiff intends to comment on future District posts concerning levies, taxation, school governance, spending, student performance, and related matters when Defendants open those posts for public comment.
66. Plaintiff's intended future comments will express views similar to those that previously triggered the challenged moderation.
67. Defendants have not rescinded, repudiated, or replaced the challenged moderation practice with published objective, viewpoint-neutral standards.
68. Defendants have not assured Plaintiff that he will be permitted to participate on equal terms with other members of the public when comments are opened in the future.
69. Issues concerning school funding, levies, taxation, governance, spending, and student performance are recurring subjects of District communications and public debate, and Plaintiff expects those issues to continue to arise.

---

## V. FIRST CLAIM FOR RELIEF

**42 U.S.C. § 1983 – First Amendment**

70. Defendants acted under color of state law because the challenged moderation decisions were undertaken through the District's official Facebook page using authority available to them only because of their official roles in administering that governmental account.
71. By creating, maintaining, and administering the interactive comment features on the District's official Facebook posts for participation by members of the public, Defendants opened an official governmental space for private speech subject to First Amendment constraints, including the prohibition on viewpoint discrimination.
72. In such a forum, restrictions on private speech must be reasonable in light of the purpose of the forum, and must be viewpoint neutral. Defendants could not exclude or burden Plaintiff's speech because of the viewpoint Plaintiff expressed concerning the levy, District governance, District spending, or District performance.
73. Plaintiff's speech concerned a pending public vote, public taxation, public expenditures, student outcomes, and the performance of public officials and institutions, all of which are matters of public concern.

74. The sequential disabling of comment functionality after Plaintiff's participation, together with the hiding of Plaintiff's comments while other participants continued commenting within the same discussion threads, supports a plausible inference that Defendants selectively applied moderation tools against Plaintiff because of his viewpoint rather than pursuant to objective, uniformly applied, viewpoint-neutral standards.
75. The District's asserted justification that comments had become unrelated or disruptive was selectively applied or otherwise not enforced in an objective and viewpoint-neutral manner because Plaintiff's comments continued to address the subject of the levy and because other users continued discussing the same subject matter within the same threads.
76. Defendant Longview School District No. 122 is liable under 42 U.S.C. § 1983 because the challenged actions were taken pursuant to District policy, custom, or practice, including the District's admitted standard practice of disabling or hiding comments it deemed unrelated or disruptive, the authority delegated to District employees to administer and moderate the District's official Facebook page, the participation and direction of senior District officials—including Superintendent Karen Cloninger and Executive Director of Communications & Operations Rick Parrish—in implementing and enforcing the challenged moderation practices, and the District's failure to adopt or implement written, objective, viewpoint-neutral moderation standards or training.
77. Defendants Rosie Carter, Karen Cloninger, and Rick Parrish are individually liable under 42 U.S.C. § 1983 because, while acting under color of state law, they personally participated in, directed, authorized, implemented, enforced, or ratified the challenged moderation decisions and practices.

---

# VI. INJURY

78. Plaintiff lost the ability to participate in an ongoing interactive forum addressing matters of public concern on the District's official Facebook page.
79. Plaintiff's comments were hidden or burdened in a manner that deprived Plaintiff of the ability to communicate his views to other participants in the discussion and to respond on equal terms in the interactive portions of the District's official posts.
80. Plaintiff suffered deprivation of rights secured by the First Amendment.
81. The challenged restrictions chilled Plaintiff's willingness to continue participating in political discussion on the District's official social media accounts and created an ongoing risk of future exclusion from those forums.

---

# VII. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

A. Declare that Defendants' actions violated Plaintiff's rights under the First Amendment to the United States Constitution;

B. Declare that the interactive portions of the District's official Facebook posts, when opened for public comment, constitute an official space for private speech subject to First Amendment limitations, including the prohibition on viewpoint discrimination;
C. Enter preliminary and permanent injunctive relief prohibiting Defendant Longview School District No. 122, and its officers, agents, employees, and persons acting in concert with them, from hiding Plaintiff's comments, disabling public comment functionality in response to Plaintiff's viewpoint, or otherwise restricting speech in the interactive portions of the District's official social media accounts on the basis of viewpoint, and from enforcing unwritten or unguided comment-moderation practices in a manner inconsistent with the First Amendment;
D. Award nominal damages;
E. Award compensatory damages in an amount to be determined at trial;
F. Award punitive damages against Defendants Rosie Carter, Karen Cloninger, and Rick Parish, in their individual capacities, to the extent permitted by law;
G. Award reasonable attorney's fees and litigation expenses to the extent authorized by 42 U.S.C. § 1988 and other applicable law;
H. Award prejudgment interest, where permitted by law, and post-judgment interest as provided by law;
I. Award costs; and
J. Award such other and further relief as the Court deems just and proper.

---

# VIII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

---

Dated September 17, 2026

Respectfully submitted,

s/ Sean Turpin
Sean Turpin
2421 Nichols Blvd
Longview, WA 98632
509-306-9118
Seanrturpin@gmail.com
Plaintiff, Pro Se